# Young's Appeal.

1. Where an erroneous decree has been entered by the Orphans' Court and nothing has been done in pursuance thereof, said court has discretionary power either under the act of October 13th 1840, § 1, Pamph. L. 1, or independently of that act subsequently to correct the error in its original decree.

2. The fact that a decree of the Orphans' Court has been affirmed on appeal by the Supreme Court, does not preclude said first named court from subsequently reviewing and vacating the decree.

3. A testator, by his will, devised and bequeathed his whole estate to his three executors, A., B. and C., upon certain trusts. Said executors afterwards filed a joint account, showing a cash balance in their hands. As a matter of fact A. never had any of the assets in his hands, the sole charge of the estate being undertaken by B. Four years after the filing of the account A. died intestate. At the time of his death B. was entirely solvent, and trusted and respected in the community. There was no reason to suppose that he had committed a devastavit, nor did A. nor any of the

testator's beneficiaries suppose that such was the case. B. continued to carry on the affairs of the estate for more than six years after A.'s death, with the knowledge of the testator's beneficiaries, and without objection on their part. He then absconded, taking with him the assets of the estate. Three years afterwards A.'s administrator was cited to file an account, and it was sought to charge A.'s estate with the cash balance appearing from the joint account of the executors to be in their hands. *Held*, that under the circumstances of the case A.'s estate should not be so charged.

October 31st and November 1st 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, TRUNKEY, STERRETT and GREEN, JJ. PAXSON, J., absent.

APPEAL from a decree of the Orphans' Court of *Allegheny county:* Of October and November Term 1881. No. 90.

This was an appeal by James S. Young, administrator d. b. n. c. t. a., and substituted trustee of the estate of Gilson C. Lightcap, Sr., deceased, from a decree of the said court setting aside a former decree surcharging Maria Dempsey, administratrix of Samuel L. Robinson, executor and trustee under the will of said Gilson C. Lightcap, Sr., with a certain sum, and confirming the account of said Robinson as executor filed by his said administratrix.

Gilson C. Lightcap, Sr., died January 28th 1865. By his will he nominated as his executors his son Gilson C. Lightcap, Jr., Samuel L. Robinson and S. B. W. Gill. He directed his said executors to sell all his real estate and to invest the proceeds, together with all his personal property, in safe and good securities, which securities he directed them to hold in trust for the benefit of his wife and children in certain manner and form directed and provided by him. Letters testamentary were granted to the three executors named in the will, who thereupon proceeded to perform the duties laid upon them. They sold all the testator's real estate, executed joint deeds to the purchasers, received a portion of the purchase money in cash and took mortgages upon the properties sold for the residue.

In 1866 said executors filed a joint account charging themselves with various sums, including the cash realized from the real estate sold, the whole aggregating $23,790.00. They credited themselves, *inter alia*, with the amount of the mortgages not yet collected and with divers others sums, aggregating $14,018.33. The balance, in cash, remaining in their hands appeared to be $4,170.37.

Although Robinson joined in the deeds for the real estate and in the above account, no assets of the estate actually came into his hands. Gill attended to all business matters, received the amount of the various mortgages as they fell due, and entered satisfaction of record thereof.

On August 5th 1870, Robinson died intestate, and letters of

administration were granted upon his estate to his widow, Maria Robinson now Dempsey. At the time of Robinson's death his co-trustee and executor, Gill, was an attorney-at-law in good standing and universally trusted and respected in the community. He continued after Robinson's death as before to have sole charge of the assets of Gilson C. Lightcap, Sr.'s estate. In September 1877, Gill absconded, taking with him all the cash and valuables of the said estate. He was subsequently dismissed by the Orphans' Court from his office of executor and trustee.

In May 1878, the Orphans' Court, on petition of one of the children of Gilson C. Lightcap, Sr., directed Gilson C. Lightcap, Jr., and Maria Dempsey, administratrix of Samuel L. Robinson, to file separate accounts of the estate of Gilson C. Lightcap, Sr. Maria Dempsey thereupon filed the following account :

" Accountant does not charge herself with any portion of the estate of the said Gilson C. Lightcap, deceased, no portion of said estate having come into her hands as administratrix of said Samuel L. Robinson, the balance shown by the former account of the executors of said Lightcap having been received and retained by S. B. W. Gill, the co-executor of said Samuel L. Robinson, with the knowledge and consent of the devisees of the testator, and no property or effects of said estate having come into the hands of said Samuel L. Robinson, since the filing of said former account, and the said Samuel L. Robinson having died the 5th day of August, A. D. 1870.

" Accountant claims credit as follows :

" Paid Register Hoerr, filing and passing this account, . $8 00

" Balance due accountant, . . . . . $8 00

MARIA DEMPSEY."

The account was confirmed nisi, but exceptions being filed thereto, the court, HAWKINS, P. J., after argument, entered a decree surcharging the accountant with the cash balance shown by the former joint account, viz., $4,170.37, with interest thereon, but limiting the surcharge to the personal estate of Robinson.

The children of Gilson C. Lightcap, Sr., took an appeal from this decree to the Supreme Court, assigning for error :

1. The refusal of the court to surcharge the accountant with the money collected by Gill, one of the executors, on the purchase money mortgages mentioned in the account, in addition to the surcharge of the cash balance shown by the account.

2. That the court erred in limiting the surcharge made to the personal estate of said Robinson, deceased.

After argument, the Supreme Court, being of opinion that the question as to whether the amount decreed against the

[Young's Appeal.]

accountant was or was not a lien against the real estate of Robinson, was not before the Orphans' Court at that time, and would not properly arise until it was asked to make an order to sell said real estate, in their opinion, filed October 25th 1880, affirmed the decree, except the last clause, "The foregoing surcharge is limited to the personal estate of Samuel L. Robinson," which was reversed and the appeal dismissed.

In 1880 Gilson C. Lightcap, Jr., was discharged from the office of executor and trustee under his father's will, and on October 25th 1880 letters of administration d. b. n. c. t. a. on said estate were granted to James S. Young, who was subsequently also appointed trustee of said estate.

On November 17th 1880, said James S. Young, administrator and trustee, petitioned the Orphans' Court for a writ of fieri facias with which to levy, out of the lands and tenements of the estate of said Robinson, the sum decreed against his estate.

Pending this petition Maria Dempsey, administratrix, presented a petition setting out all the foregoing facts and praying the court to review and reverse the decree surcharging her. Answers were filed, and after argument the prayer of the petition was granted, HAWKINS, P. J., filing the following opinion:

"Further investigation and reflection have led to the conclusion that this court committed error in surcharging the present accountant with the cash balance shown in the joint account which was filed by the trustees named in the will of G. C. Lightcap, deceased. Some of the reasons upon which this conclusion is based were not suggested by counsel at the first hearing, nor did they occur to the court until after the decree had been made. In view of the appeal taken from the decree to the Supreme Court and its affirmance, can this error of surcharge be now corrected by this court?

"The appeal to the Supreme Court was taken by the exceptants, and was based solely on the refusal to surcharge the securities mentioned in the joint account and on the interposition of the bar of the statute of limitation as respected deceased's real estate. It had in fact no reference to the surcharge of the cash balance. That part of the decree was in the exceptant's favor. The accountant might have, but has not, taken an appeal from it. But she may yet take an appeal and have the affirmed decree reversed as respects the surcharge. It follows that the question of whether the surcharge was properly made was not before, and was not decided by, the Supreme Court. In such case Parker's Appeal, 61 Pa. St. 478, is authority for holding that the Orphans' Court has jurisdiction to entertain a bill of review. But it is claimed that the petition is insufficient, because it does not allege (1) error on the face of the decree, nor (2) new, or (3) after-discovered evidence, as required by the Act of 13th October

1840. The authority of Parker's Appeal, supra, is a complete answer to this claim. But if it were not, the Orphans' Court has discretionary power, outside of the proviso of that statute, to grant relief: Gillen's Appeal, 8 W. N. C. 499; Whelan's Appeal, 70 Pa. St. 410; and the circumstances of this case are such as to justify the exercise of that discretion. Nothing having been done under the decree no one can be injured by setting it aside in the interest of justice.

"The evidence shows that Gill was the trusted and confidential adviser of testator in his lifetime, and that he became and continued to be, until he absconded, the acting trustee, after testator's death, with the knowledge and without objection on the part of the legatees; that while Mr. Robinson joined in the sales of real estate made, and in his account filed with his co-trustees, he never in fact received any part of the assets, had no reason to suspect Gill's honesty, and was never called upon by the legatees to interfere in the administration of the trust, and that it was not until long after Gill had absconded, and more than nine years after Mr. Robinson's death had elapsed, that any proceedings were instituted by the legatees against Mr. Robinson's personal representatives in assertion of his liability for the assets embraced in the joint account.

"There can be no doubt that the joint account was a confession of joint liability on the part of the trustees, and, was there nothing more, would be conclusive. But subsequent events changed the relations of the parties as respected the liability of the trustees. On the death of Mr. Robinson the office of trusteeship devolved upon the survivors, and it thereupon became their duty to collect from his personal representative whatever assets were in fact in his hands at the time of his death: Bunting's Appeal, 4 W. & S. 469; Ray v. Doughty, 4 Blackf. 115; Beattie v. Johnstone, 8 Hare 169; Goble v. Andrews, 1 Green Ch. 66; Schenck v. Schenck, 1 C. E. Green 182; Act of May 3d 1855, § 2 (P. L. 415, Purd. Dig. 1426); Brown's Appeal, 12 Pa. St. 337; Seibert's Appeal, 19 Id. 49; Stearly's Appeal, 3 Gr. 270; Jones' Appeal, Id. 169. Had a citation been issued at the instance of the survivors, the only answer that could have been made would have been that no assets had come into the hands of the deceased trustee, but that all the assets were already in the hands of the survivors. A citation would, therefore, have been useless and unnecessary, so far as the trust estate was concerned, and accordingly no citation was issued, nor account filed.

"Had an account showing no assets in Mr. Robinson's hands in fact been filed before Gill absconded, it would doubtless have been confirmed absolutely; for the legatees knew that Gill had all the assets in his hands and they had implicit confidence in

him. Such confirmation would have been an adjudication of the fact that Mr. Robinson had no assets in his hands. Would it have been conclusive? There is no doubt that it would as respected the surviving trustees and those legatees who were sui juris; and there are strong reasons why it would as respected the son and testator, who was then a minor. One manifest purpose in G. C. Lightcap in appointing trustees was, through them, to preserve the corpus of his estate during the lifetime of his widow for his children at her death. By virtue of their appointment the trustees became invested on the testator's death with "all the legal title and authority" which might become necessary to effectuate that purpose. The children were neither necessary nor proper parties to any suit by or against the trustees which involved the preservation of the trust estate. A judgment for or against the trustees alone would, therefore, be conclusive on the children without regard to their minority at the time of its rendition, in the absence of fraud or gross negligence on the part of the trustees. This will be conceded of the three trustees during the lifetime of Mr. Robinson. It is also true of the survivors, if it be true, as it undoubtedly is, that on the death of Mr. Robinson "all the legal title and authority" which had been invested in three, ipso facto, devolved upon them by operation of law. The estate of Mr. Robinson thereupon became responsible as debtor for any devastavit which has been committed by him and for any assets which were in his hands when he died (Hocker v. Woods, 33 Pa. St. 466), but was not responsible for acts done or committed by his co-trustees subsequent to his death: Stephen's Appeal, 56 Pa. St. 409. If he had committed devastavit, or had assets in his hands, it was the duty of the survivors to apply the remedy, and they were responsible for its neglect. The children would have been no more proper nor necessary parties to any action brought by the trustees in that behalf than for the recovery of assets in the hands of a stranger.

"The purpose of the 2d section of the Act of 3d May 1855, was similar to that of the 31st section of the Act of 24th February 1834, P. L. 78, Purd. Dig. 425. In both, that purpose was the regulation of succession, and of the duties incident to succession, in the office of trustees; the former Act relating to special, and the latter to ordinary administration trusts. In neither was the language expressly exclusive of the right of beneficiaries to intervene as parties in action for or against the trust estate, and yet in Drenkle v. Sharman, 9 W. 485, and Carter v. Trueman, 7 Pa. St. 315, it was held that such was the intent of the last mentioned Act (of 24th February 1834, § 31). There is no reason why there should be any difference in the construction of the two acts. But even without the Act of

[Young's Appeal.]

1855 the children of testator would have no right to intervene, in the absence of collusion and fraud, as between Mr. Robinson and his co-trustees, or insolvency on the part of the survivors: Alsager *v.* Rowley, 6 Ves. Jr. 749; Stell's Appeal, 10 Pa. St. 149. It is not alleged that there was any collusion or fraud. And there is no evidence that at the time of Mr. Robinson's death the survivors were insolvent. Indeed, there is every just ground of inference that at that time, and for several years after, Gill, in whose hands the assets actually were, could have satisfactorily settled his accounts, or have given satisfactory security, if he had been required. The estate of Mr. Robinson could no more be justly held responsible for Gill's subsequent insolvency than for his subsequent acts as surviving trustee. It did not occupy any trust relation to the estate of G. C. Lightcap, deceased: Stephen's Appeal, supra; Hocker *v.* Wood, supra.

"If then the confirmation of an account filed by the personal representative of Mr. Robinson, before Gill absconded, would have been effective to protect Mr. Robinson's estate, why should not the same state of facts and law which would have justified such confirmation be equally effective now? The confirmation was simply the judicial conclusion from the facts which were represented by the account. The same facts ought now to lead to the same conclusion.

"No new facts have arisen since Mr. Robinson's death which can affect the liability of his estate to the trust. It is true now, as it was then, that he had committed no devastavit, had no assets in his hands, and his estate was not liable for the subsequent acts of his survivors. It is true now, as it was then, that the trust estate devolved upon the survivors; that all the assets were in their hands, where they belonged, and that they were solvent. It is true now, as it was then, that in the absence of collusion and fraud as between Mr. Robinson and his co-trustees, and insolvency upon the part of the survivors, testator's children had no right of recourse against the deceased trustee's estate, but that the surviving trustees had the exclusive right of action and were alone responsible to the legatees. There is no evidence tending to show that any devastavit had taken place prior to Mr. Robinson's death. Certainly neither Mr. Robinson nor the legatees had any suspicion nor ground of suspicion that there had. As already stated, there is no room for doubt that at that time, and for several years afterwards, Gill could have settled his accounts satisfactorily, or have furnished sufficient security, had it been required. If the legatees thought otherwise they were guilty of gross negligence as well as gross injustice in failing to notify the administratrix of Mr. Robinson's estate, and to institute proceedings against Gill in time. There is, then, nothing upon which to base a presumption that the devastavit took place in

Mr. Robinson's lifetime.   He has not, therefore, been shown to have been in default.

"That Gill continued for more than six years after Mr. Robinson's death to transact all the business, and handle all the assets of the estate, as acting trustee, with the knowledge and without objection on the part of the legatees, and that no proceedings were instituted against Mr. Robinson's estate for more than nine years after his death, is strongly pursuasive, if not conclusive evidence, that the legatees looked to Gill alone as the responsible trustee.   They clearly have no equity against the estate of Mr. Robinson.   Their loss is a misfortune which was in no sense the result of any default on his part, and no injustice can be done in declaring his estate free from liability.   Hocker *v.* Wood, supra ; Haage's Appeal, 17 Pa. St. 190 ; Ducommun's Appeal, Id. 268, and Hengst's Appeal, 24 Id. 419, which were cited by exceptant's counsel, do not sustain his view.   Haage's Appeal rules that where one survivor of three executors files an account in which he charges himself with balances shown in joint accounts, previously filed by him and his co-executors, the estate of his deceased co-executors becomes thereby released, and he alone remains liable.   Ducommun's Appeal was not a case of survivorship.   Hengst's Appeal is distinguished from the present case by the fact that the executor, whose estate was charged, had been guilty of gross negligence, that he had assets in his hands, and that his co-executor, who had previously removed from the state, was insolvent when he (the executor charged) died.

"It follows that, both on reason and authority, the decree of this court surcharging the present accountant with the cash balance shown in the joint account, filed by the trustees named in the will of G. C. Lightcap, deceased, was erroneous and should be set aside, and that the exceptions filed to the original account in this case should have been dismissed, and said account confirmed absolutely as filed."

A decree was accordingly entered vacating and setting aside the former decree of the court, dismissing the exceptions to the account and confirming the same absolutely.   James S. Young, administrator and trustee, et al., thereupon took this appeal, assigning for error the granting of the review, the vacating of the original decree of surcharge, and the refusal to surcharge the accountant with the cash balance appearing by the joint account of the executors to be in their hands.

`Lewis McMullen` (with whom was *J. T. Myler*), for appellants.—A bill of review can only be had as a matter of right in case of after-discovered evidence or for error of law appearing in the body of the decree:  Riddle's Estate, 7 Harris 431 ;

3 OUTERBRIDGE—6

[Young's Appeal.]

Hartman's Appeal, 12 Casey 74; Green's Appeal, 9 P. F. S. 238.

A general allegation of error in the decree is not sufficient upon which to grant a re-hearing: Russell's Administrators' Appeal, 10 Casey 258 ; Act of October 13th 1840.

It is not contended that the Orphans' Court has not discretion to grant a bill of review ex gratia, when new evidence as to the facts upon which the decree was grounded, and that by due diligence it could not have been used at the original hearing, is set forth in the petition. Being in the nature of a new suit it is the right of the respondent to have new evidence set out fully in the petition, so he will know what he has to answer, and the court has no right to take that right away from him by granting a re-hearing ex gratia, on a petition that does not in any way intimate that a single word of new evidence has been discovered; that contains nothing but a general allegation that the decree is inequitable and unjust—a vague notion that there must be error somewhere, or everywhere, alleging no mistake in stating the account, nor newly-discovered facts or evidence, nor mistake in law, but merely that the decree is erroneous: Hengst's Appeal, 12 Harris 419.

The affirmance of the former decree by the Supreme Court bars the right to a bill of review: Dennison *v.* Goehring, 6 Barr 453.

There can be no question but that by the settlement and confirmation of the joint account filed by the three executors, their joint liability for the cash balance, admitted by them to be in their hands, was adjudged and fixed: Haages' Appeal, 5 Harris 190 ; Ducommun's Appeal, Id. 270 ; Hengst's Appeal, 12 Harris 419.

The only way to question that joint liability is to inquire into the decree fixing it, by a bill of review: Bunting's Appeal, 4. W. & S. 469. But it is now too late to do this.

Robinson was unquestionably derelict in his duty in allowing Gill to have sole charge of the assets. His estate ought therefore to be held liable: Weigand's Appeal, 4 Casey 473 ; Irwin's Appeal, 11 Casey 294.

If the legatees did know that the funds were in Gill's hands it would not absolve the other executors from liability incurred by gross negligence: Ducommun's Appeal, supra.; Lincoln *v.* Wright, 4 Beavan 427; Burrows *v.* Walls, 5 De Gex, Macnaghten & Gordon, 246; De Haven *v.* Williams, 30 Smith 482.

*George Shiras, Jr.,* for appellee.—As to the first ground of complaint, it would seem to be clearly within the power of the Orphans' Court, as conferred by the Act of October 13th

[Young's Appeal.]

1840, and also, outside of the provisions of that statute, to open its decree for error therein contained : Parker's Appeal, 11 P. F. S. 478; Whelen's Appeal, 20 P. F. S. 410.

In point of fact, the particular item, the cash balance in the co-executors' account, with which the Orphans' Court had charged the estate of Samuel L. Robinson, had never been litigated or considered in the Supreme Court, and hence the confirmation by that court of the decree of the Orphans' Court did not prevent re-examination.

Whatever may have been the former confusion of the authorities, the rule is now well settled that, as between executors and legatees, one executor is not to be held for misappropriation by another unless he participated in the misappropriation. Hence, when, as in the present case, an executor dies before the act of misappropriation by his co-executor, his estate will not be held : Williams on Executors (5th American edition) 1660; Perry on Trusts, §§ 421–426; McKim v. Aulbach, 1881, Alb. L. J. 317; Edmonds v. Crenshaw, 14 Pet. 166.

One executor cannot be held responsible for the waste or misconduct or another unless there be some act or agreement on the part of the one sought to be charged by which the estate went into or has been negligently suffered to remain in the exclusive custody of the one by whose misconduct the loss occurred : Longford v. Gascoyne, 11 Ves. 333. An executor is not to be held further than he is shown to have participated in the misappropriation : Peter v. Beverly, 10 Pet. 562; Brazier v. Clark, 5 Pick. 196; McNair's Appeal, 4 Rawle 157; Sterrett's Appeal, 2 P. & W. 419.

Mr. Justice GREEN delivered the opinion of the court, January 9th 1882.

When this case was here before, the question involved in the present contention was not before us. It follows that the decision then made determined nothing as to the matter now in controversy. It cannot be doubted that the court below had ample power to correct the error of its original decree, either under or independently of the Act of 13th October 1840. Nothing had been done under the decree, and if it was erroneous it ought to be corrected in the interest of justice and by the court that made it. We held in Parker's Appeal, 11 P. F. Smith 478, that the Orphans' Court, under the Act of October 13th 1840, might entertain a bill of review notwithstanding a decree of affirmance by the Supreme Court. The discretionary power of the Orphans' Court to correct its own errors by petition of review outside of the provisions of the Act of 1840, has been affirmed in the cases of Gillen's Appeal, 8 W. N. C. 499, and Whelan's Appeal, 20 P. F. Smith 410, and is manifest

[Young's Appeal.]

upon plain principles applicable to the power of all courts over their own decrees.

The chief contention here is upon the question of the propriety of the original decree of surcharge. The learned judge of the court below, in a carefully prepared opinion has indicated with much force the reasons which induced him to regard that decree as erroneous. He has expressly found, upon the evidence taken in the course of the proceedings upon the account, that no devastavit was committed until long after the death of Robinson, the deceased accountant. It is very clear that upon Robinson's death the right to the control and disposition of the assets of Lightcap's estate devolved upon, and resided in, the surviving executors, and they were responsible for its exercise. As the testimony taken in the court below has not been printed, we are bound to assume that all the facts found by the Orphans' Court, and reported in the opinion, were found upon sufficient testimony. As set forth in the opinion they are, that Robinson never had any of the assets of the estate of Lightcap in his hands up to the time of his death; that all the assets of the estate in point of fact were where the law had cast them, in the hands of the surviving executors after Robinson's death, and that those executors were solvent; that there is no evidence tending to show that any devastavit had occurred prior to Robinson's death, and that neither Mr. Robinson nor any of the legatees had any ground of suspicion that such devastavit had taken place; that at the time of Robinson's death Gill, the executor who had and administered the assets, was entirely responsible and able to settle his accounts or to give security, had it been required, and continued in that condition for several years later; that Gill continued for more than six years after Robinson's death to transact all the business and handle all the asssets of the estate, as acting trustee, with the knowledge, and without objection on the part of the legatees. No proceedings were instituted against Robinson's estate until more than nine years after his death; and this is, as the learned Judge of the Orphans' Court well says, strongly persuasive evidence that the legatees looked to Gill alone as the responsible trustee.

In this state of the facts it is contended that the estate of Robinson is liable as for a devastavit, mainly because he had joined in the original account filed by the three executors, in which they admitted a balance in their hands. Ordinarily it is quite true that the filing of a joint account is an admission of joint liability for the balance in hand. But it by no means follows that such joint liability is a continuing obligation which remains fixed and established as a judicial decree and without regard to subsequent circumstances. Hengst's Appeal, 12 Harris 413, chiefly relied upon by the learned counsel for the appel-

lants, furnishes both the rule and its exceptions. It was there held that the filing of a joint account renders the accountants prima facie liable jointly for the acknowledged balance, but the death of one of the accountants, at *law* discharged his liability. In equity, however, the liability survived if there were equitable circumstances showing that it ought to be continued. Thus if the deceased accountant had actually received the money, or the survivor was insolvent and the deceased had made no effort during a number of years to secure the fund received by the insolvent executor, in such circumstances the liability would survive and could be enforced against the estate of the deceased, solvent, joint accountant. But that liability was shown to depend, not upon the mere fact of the filing of the joint account, but upon that fact combined with the equitable circumstances stated. Now in the present case there is an entire absence of these circumstances. Robinson never received any of the assets of the estate, and Gill, who did receive them, was not only not insolvent during Robinson's lifetime, but continued entirely solvent for a number of years after his death, as he had been before. There was, therefore, no neglect on Robinson's part in not securing the fund in Gill's hands, before his death. It is also contended that the omission of the executors to invest the fund as directed by the will constituted a devastavit as to Robinson during his life. The authority cited for this is Wiegand's Appeal, 4 Cas. 473. That, however, was a case in which the proceeding was against the surviving executor, against whom, of course, the obligation to execute the will was a continuing one, for the neglect of which he was undoubtedly liable. No case is cited, either from the English or American reports, in which a liability has been declared and enforced in circumstances such as are present here; and the tendency of modern cases is certainly to hold accountants responsible for their personal defaults, and for such as have resulted from personal negligence, but not for the mere defaults of others with whom they have been joined, unless there are special equitable circumstances requiring it. For these reasons we think the action of the court below in setting aside the orginal decree of surcharge was right, and therefore—

The decree is affirmed.